See also 2001 WL 64745.

Ivelisse **MORALES**, Plaintiff,

v.

**ZONDO, INC. d/b/a Ecclissi Sterling Silver,** Defendant.

No. 00CIV3494(AGS).

United States District Court, S.D. New York.

May 4, 2001.

Michael D. Diederich, Jr., Stony Point, NY, for plaintiff.

Eric M. Nelson, New York City, for defendant.

## MEMORANDUM ORDER

SCHWARTZ, District Judge.

In this action, plaintiff Ivelisse Morales ("plaintiff") asserts claims for pregnancy and gender discrimination arising out of her employment with defendant Zondo, Inc. ("defendant"). Plaintiff now moves to compel discovery, for certain rulings on admissibility, and for sanctions against defendant's counsel as a result of his conduct at the deposition of defendant's principal. For the reasons set forth below, the motions are granted in part and denied in part.

## I. Motion to Compel

### A. Identity of Employees

Plaintiff requests that the court compel defendant to produce (i) the names of two individuals whose identities were redacted from two of defendant's "Employee Warning Notices," and (ii) the identity of present or former employees of defendant who were "excessively tardy, absent, or insubordinate, or who made excessive or unauthorized personal telephone calls, and any documents reflecting same." (Memorandum of Law in Support of Plaintiff's Motion to Compel Discovery and for Costs/Sanctions ("Pl.Mem.") at 13–14.)

The Court denies this request. The Court previously ruled at the pretrial conference on February 7, 2001 that, on grounds of relevance and the employees' own privacy, defendant was not required to disclose the names of the two individuals who received "Employee Warning Notices." The Court declines to alter that decision here. Plaintiff has failed to set forth any reason why the identity of these employees is relevant to the prosecution of her employment discrimination action. She claims their identities are necessary to prove disparate treatment by defendant and that plaintiff's discipline and termination were a pretext for discrimination. (Pl. Mem. at 10.) However, the mere fact that certain employees have not been identified by name does not preclude an inquiry into the circumstances of their employment, and the possibility of disparate treatment. As defendant points out, plaintiff has been aware for several months of the number of instances in which other employees received warning notices during the time plaintiff was employed at the company, the nature of the violations which prompted the warnings, the language and content of those warn-

ings. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery and for Sanction ("Def.Mem.") at 2.) Plaintiff does not indicate that she intends to contact either of the employees in question, depose them, or conduct any other form of discovery. Plaintiff also had the opportunity, prior to the close of discovery, to inquire into the employment and/or termination of such employees via interrogatory and at the deposition it conducted of defendant's principal. (Deposition of Robert Elizondo dated Jan. 19, 2000 ("Elizondo Dep.") at 140:22–143:10.)

On the same basis, the Court declines to order defendant to provide plaintiff with the *identity* of those employees who were "excessively tardy, absent, or insubordinate, or who made excessive or unauthorized personal telephone calls." (Pl. Mem. at 2; Declaration in Support of Motion to Compel Discovery and for Sanctions ("Diederich Decl."), Ex. 2.) However, to the extent not already provided, the Court directs defendant to furnish plaintiff with any *documents* reflecting such judgments, e.g. additional warning notices or disciplinary records, as such documents are clearly discoverable and may be relevant to plaintiff's case.

## B. Defendant's Counsel's Fee Arrangement and Billing

▮ Plaintiff also requests that the Court order defendant's counsel to disclose (i) the fee arrangement between defendant and defendant's counsel, and (ii) invoices of defendant's counsel's work to date. Plaintiff claims that such information is relevant to his request for attorney's fees, and to any objection by defendant thereto, and the Court's calculation of such fees. She also points out that the Court ordered plaintiff's counsel to disclose his fee arrangement. (Pl. Mem. at 14–15.)

The Court denies this request. The Court, at a conference, directed plaintiff's counsel to disclose his fee arrangement because (i) the Complaint requests attorney's fees on each of plaintiff's three causes of action, and (ii)

plaintiff effected a substitution of counsel in the middle of the case, and plaintiff's previous lawyers potentially have a claim for attorney's fees. (Deposition of Ivelisse Morales dated Oct. 16, 2000 ("Pl.Dep."), Ex. 6 to Diederich Decl., at 228–29.) Plaintiff has provided no reason why defendant's fee arrangement is relevant.

## II. Rulings on Admissibility

Plaintiff requests that the Court promptly rule on certain of defendant's counsel's objections as to the form of questions by plaintiff's counsel at the deposition of defendant's principal, Robert Elizondo ("Elizondo"). In the alternative, plaintiff asks the Court to permit Elizondo to be redeposed. (Pl. Mem. at 16–17; Diederich Decl., Ex. 5.) Plaintiff states that the reason for making such request "is the admissibility of [Elizondo's] answers at trial" and that he is "satisfied with Mr. Elizondo's answers for the purposes of [defendant's upcoming] summary judgment motion." (Pl. Mem. at 17.) The Court denies this request;[1] it will rule on the admissibility of the 24 answers at issue, if needed, on pretrial motions or at trial.

## III. Motion for Sanctions

The Elizondo deposition was conducted by plaintiff's counsel, Michael D. Diederich, Jr., Esq. ("Diederich"), on January 19, 2001 at the office of defendant's counsel, Eric M. Nelson, Esq. ("Nelson"). Plaintiff moves for sanctions, pursuant to Fed.R.Civ.P. 37 ("Rule 37") and Fed.R.Civ.P. 30 ("Rule 30"), against Nelson for his alleged efforts to obstruct the disclosure of relevant information during the Elizondo deposition. (Pl. Mem. at 4, 17–19.) Plaintiff claims that Nelson's conduct caused the deposition to extend twice as long as originally contemplated by the parties, and therefore involved twice the expense than was otherwise necessary. (*Id.* at 18.) In particular, plaintiff alleges that Nelson (i) refused to allow plaintiff's counsel access to the office telephone to call the Court regarding a dispute that emerged at the deposition; (ii) engaged in improper private conversa-

---

1. The Court notes that plaintiff will be given an opportunity to redepose Elizondo, pursuant to the Court's ruling on sanctions in Part III, *infra*.

tions with Elizondo, out of earshot of plaintiff's counsel; (iii) improperly "coached" Elizondo in order to indicate how Elizondo should answer a question, or to encourage him to state that he did not know the answer; (iv) improperly directed Elizondo not to answer certain questions; (v) engaged in colloquies concerning the matters on which the witness was being questioned, as well as certain irrelevant matters; and (vi) interrupted the deposition in order to inspect extraneous exhibits, and then reshuffled such exhibits to make it more difficult for plaintiff's counsel to refer to them. (Pl. Mem. at 4–9.) Defendant opposes such request for sanctions, and suggests that Diederich be sanctioned instead. (Def. Mem. at 14–16; Declaration of Eric M. Nelson dated Apr. 12, 2001 ("Nelson Decl.")). Defendant contends that (i) Diederich is equally to blame for the protracted nature of the deposition, (ii) Nelson's statements on the deposition record, beyond objections as to form, were "prompted by Mr. Diederich's own conduct," and (iii) Nelson did not "coach" Elizondo, because the latter's answers were his alone, and Nelson had legitimate reasons for speaking privately to the witness and instructing him not to answer or to answer "yes" or "no". (Nelson Decl. ¶¶ 3–16.) In his declaration on the instant motion, and apparently in support of his own request for sanctions, Nelson also accuses Diederich of certain misconduct associated with his questioning during the deposition. (Nelson Decl. ¶¶ 17–20.) While, as a general matter, this Court does not encourage sanctions motions and is hesitant to impose sanctions, it has decided to impose sanctions against Nelson in this case, and deny his cross-motion to the extent it has been made.

## A. Authority for Sanctions

■ Plaintiff has moved for sanctions under Rules 37 and 30. Rule 37 provides for an award of expenses in connection with a deposition in three circumstances, none of which are applicable here: costs in connection with a motion to compel, failure to comply with court-ordered discovery, and failure to attend a deposition. Fed.R.Civ.P. 37(a)(4), 37(b)(2)(E), 37(d)(1). Under Rule 30(c), all objections made at the time of the deposition should be noted, but "the examination shall proceed, with the testimony being taken subject to the objections." Rule 30(c). Rule 30(d) provides that any objection during a deposition is to be "stated concisely and in a non-argumentative and non-suggestive manner." Rule 30(d)(1). Moreover, a deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to protect a witness from examination "being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party." Rules 30(d)(1), 30(d)(3); *see also Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, No. 96 Civ. 0799, 1997 WL 482518, at *9 (S.D.N.Y. Aug. 21, 1997). Further, in general, a deponent and the deponent's attorney have no right to confer during a deposition, except for the purpose of determining whether a privilege shall be asserted. *Am. Fun*, 1997 WL 482518, at *9 (citing 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 30.42[2] (3d ed.1997)). Sanctions, including costs and attorney's fees, may be awarded under Rule 30 for conduct that the Court determines has "frustrated the fair examination of the deponent." Rule 30(d)(2).

■ Two other authorities are relevant here. Under 28 U.S.C. § 1927 ("Section 1927"), sanctions may be imposed on any attorney "who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously." Section 1927. The Court also has inherent power to sanction an attorney, "a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir.2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986)). Under Section 1927 and their inherent power, courts

have imposed deposition costs on attorneys "whose disruptions of a deposition rendered it futile and ineffective, and were obnoxious to the orderly, reasonable, and proper conduct of an examination." *Unique Concepts, Inc. v. Brown,* 115 F.R.D. 292, 293–94 (S.D.N.Y.1987) (citation and internal quotations omitted).

## B. Conduct at the Deposition

█ A review of the transcript of the Elizondo deposition reveals the seriousness of the disruptions in this case. Although the questions posed by Diederich could certainly have been more focused, Nelson's detailed objections, private consultations with the witness, instructions not to answer, instructions how to answer, colloquies, interruptions, and ad hominem attacks disrupted the examination of Elizondo and protracted the length of the deposition. *See Learning Int'l, Inc. v. Competence Assurance Sys.,* No. 90 Civ.2032, 1990 WL 204163, at *3 (S.D.N.Y. Dec. 13, 1990); *SS & J Morris, Inc. v. I. Appel Corp.,* Nos. 97 Civ. 6938, 97 Civ. 8230, 2000 WL 1028680, at *6 (S.D.N.Y. July 26, 2000). Such conduct is particularly notable in light of the Court's direction to the parties during the deposition of plaintiff held on October 16, 2000 that objections should be stated simply as "objection," and, in Nelson's own words, "directing the witness not to answer will be limited to privilege." (Pl. Dep. at 229–30); *cf. SS & J Morris,* 2000 WL 1028680, at *5–6 (imposing sanctions on a defendant and his counsel where, *inter alia,* they disregarded a court order concerning proper conduct at the deposition in question). Nelson's interruptions were pervasive, and clearly intended to cause problems for Diederich in his examination. Nelson appears on more than 85 percent of the pages of the deposition transcript ($^{216}/_{241}$) with statements other than an objection as to form or a request to the court reporter to read back a question. *Compare Unique Concepts,* 115 F.R.D. at 293 (imposing sanctions under Section 1927 where counsel appeared on 91 percent of the pages of the deposition transcript with statements

other than an objection as to form), *with Phillips v. Mfrs. Hanover Trust Co.,* No. 92 Civ. 8527, 1994 WL 116078, at *3–4 (S.D.N.Y. Mar. 29, 1994) (declining to impose sanctions where counsel appeared on 60 percent of the pages of the transcript with statements *including* objections as to form, but nevertheless finding that sanctions under Rule 30 were a "closer question"). A portion of the dialogue with plaintiff's counsel may have been necessary; however, the majority was not. As Judge Mukasey pointed out in imposing sanctions on defendants' counsel in *Learning Int'l,* 1990 WL 204163, at *3: "If [counsel] objected to what he regarded as forays into matters that were not to be the subject of the deposition, he could have sought a ruling from the court. He was not free simply to pepper the proceeding with interruptions and directions not to answer."

The following examples illustrate the problem.[2] On at least one occasion, Nelson ordered Elizondo not to answer a question unless Nelson was able to view certain exhibits. In this instance, the witness had been asked whether he recognized plaintiff's Exhibit 8. Nelson stated that he wished to view plaintiff's Exhibit 6, which was inapposite to the question being posed. Despite the evident inconsistency, Nelson did not attempt to explain to plaintiff's counsel why Exhibit 6 was relevant, stating merely that he "want[ed] to see the God damn exhibit or the witness is not answering any more questions." (Elizondo Dep. at 134:23–25.) Elizondo finally answered the question after the ensuing delay, which consumed several pages of the deposition transcript. (*Id.* at 134:23–138:6.)

On several occasions, Nelson criticized the manner in which the examination was being conducted and/or attempted to control the manner in which questions were asked, and, on other occasions, personally insulted Diederich concerning his method of examination. The following examples are particularly notable:

---

**2.** The deposition transcript reflects, as plaintiff states, that after several of Nelson's objections as to form, Elizondo either asked for clarification, claimed he did not understand the question, or stated that he did not recall. However, the Court declines to find, as plaintiff suggests, that Nelson's objections triggered "memory failure" in Elizondo. (Pl. Mem. at 7.)

Q: What employee policies were in effect for the New York offices in 1998?

Mr. Nelson: You want him to tell you every policy that was in effect off the top of his head?

Q: Do you know what policies were in effect in 1998?

A: Not committed to memory.

Q: So you don't know what policies were in effect for Zondo, Inc.'s New York employees in 1998, is that your testimony?

Mr. Nelson: He didn't say that he didn't know any of them. He said that he didn't commit-

Mr. Diederich: If you would not coach my witness; I would like his answers as best he can to my questions.

Mr. Nelson: Okay. I object to the characterization that I was trying to coach my client. If I'm going to coach him, I would only do what the rules of procedure permit. I'm not coaching him. I'm still trying to clarify your question. You ask a question, you get an answer, then you ask a question as if that prior question had never been asked and answered. Try to listen to the witness's answers and it will help, so that you don't ask a question that makes no sense to the prior one.

Mr. Diederich: If you would reread the last question. (The record was read back by the reporter.)

Mr. Nelson: Object to the form. The witness's testimony is in the record. Whatever it is, it is. He's not going to characterize or re-characterize testimony that he's already given.

Q: You can answer as best you can.

A. No, that's not my testimony.

Q. Okay. From your recollection, what employee policies were in effect at Zondo Inc.'s New York offices in 1998?

Mr. Nelson: Same objection as I objected to a question—two or three questions ago, which amounted to that very same question. Are you asking the witness to tell you every policy he recalls on whatever subject?

Mr. Diederich: Yes.

Mr. Nelson: Okay. Tell him what you recall and take as long as you need.

A: I believe there were policies referring to office decorum, tardiness, paid time off, and also vacation.

(*Id.* at 40:23–43:10.)

    *     *     *     *     *     *

Q: Let me show you what was previously marked Plaintiff's Exhibits 16, 17, and 18, and ask if you are-

Mr. Nelson: What happened to Exhibits 4 through 15?

Mr. Diederich: They were pre-marked as you know. I'm skipping ahead if you don't mind.

Mr. Nelson: Okay.

Mr. Diederich: But thank you for clarifying that.

Q: Are you familiar with those exhibits or documents? (Handling.)

Mr. Nelson: Familiar how?

Mr. Diederich: In any way.

A: (Reviewing document.) I am unclear as to your definition of "familiar."

Q: Well, have you seen anything like that issued on behalf of your company to any of its employees?

A. Can you define "like that"?

Mr. Nelson: By the way, for the clarity of the record, 16 seems to relate to a pay period running from 7/23/98 to 7/28/98. Exhibit 17 appears to run—to be reflective of 6/25/98 to 7/1/98. And God forbid we should be in chronological order, 18 is from 7/9/98 to 7/15/98.

Q: I have a pending question as to whether or not you've seen similar such documents issued by Zondo, Inc. to its employees?

Mr. Nelson: Is that a new question now?

Mr. Diederich: If you can answer the last question.

Mr. Nelson: Which one is it?

Mr. Diederich: Apparently, he couldn't answer the last question.

Mr. Nelson: So we have a new question. What's the new question?

... Q: Is there some reason why you're not familiar—assuming that these documents are, in fact, issued to my client by your company; is there some reason why you would not be familiar with the format and appearance of such documents?

A. I am familiar with the format and appearance of this document—of these documents.

Q: So they're familiar to you then?

Mr. Nelson: Oh, how many more times are you going to ask him if he's familiar? Direct the witness not to answer. This is abusive. He just told you—you asked him, he said clarify for me whether you want to know about the form or contents. You said form and contents. He said not familiar. Now he said he is familiar with the form. You can discern that he was not familiar with the contents, but he was familiar with the form. You're not going to get any more answers on this nonsense, because you can't take an answer for granted.

(*Id.* at 98:18–102:22.)

\*     \*     \*     \*     \*     \*

Q: What was your policy regarding giving employee performance evaluations to new employees?

Mr. Nelson: When? What facility, which employees?

Q: Let's start with the general as to whether you have any general policy regarding performance evaluations of employees?

Mr. Nelson: You showed him Exhibit 2 earlier today—

Mr. Diederich: Mr. Nelson, I would like a simple answer.

Mr. Nelson: We're not going to do this. Here's the way it works. You can show the witness a document that's been produced to you. You specifically call for an excerpt from a document that was produced in the morning, and in the afternoon, you have the gall to ask him whether or not there was any general policy relating to anything about employee relations? We're not going to sit here. Ask him-

Mr. Diederich: It's 4 o'clock in the afternoon, and I would like to know whether as

apart from the written documents that may or may not have been followed, I would like to know whether Mr. Elizondo, the witness here, had a policy regarding performance evaluations, specifically giving performance evaluations to new employees employed by Zondo, Inc.

Mr. Nelson: Well, that's better at least, because it's apart from any written documents. Object to the form.

A: I don't recall.

(*Id.* at 122:5–123:17.)

\*     \*     \*     \*     \*     \*

Q: Do you have a secretary?

Mr. Nelson: Today? He said "do you," so assume the present.

A: I do not presently have an employee with the title of secretary.

(*Id.* at 125:5–9.)

\*     \*     \*     \*     \*     \*

Mr. Nelson: ... If you choose to leave today at 5 o'clock, that's your prerogative. We're prepared to stay to finish, because Mr. Elizondo is not coming back.

Mr. Diederich: Well, maybe you can cease your discussions and simply object as to form if you have an objection as form, so we can move along with the deposition.

Mr. Nelson: The record will speak for itself as to your pathological inability to ask a question that's proper. If you would ask a simple question instead of the prolix, multiple dependent clause, repetitive questions that you've asked, we would have been a lot further along.

(*Id.* at 128:2–18.)

\*     \*     \*     \*     \*     \*

Q: When did you learn that Ms. Morales was pregnant?

A: I don't recall.

Mr. Nelson: Can we note that it's 5 o'clock and we're finally getting to a question that's relevant to the claim pending in the case?

(*Id.* at 157:16–22.)

\*     \*     \*     \*     \*     \*

Q: During the time that you had these dinner meetings with Ms. Morales, would you describe or characterize your relationship with her as a cordial one?

Mr. Nelson: You mean did he have to drag her to dinner by her hair?

A. Yes.

Mr. Nelson: That wasn't a yes to my question, it was a yes to his, right?

(*Id.* at 161:16–24.)

\* \* \* \* \* \*

Q: Well, do you prepare documents related to Zondo, Inc.'s business at your home?

A: I have-

Mr. Nelson: Do you mean does he have a practice of doing so or has it ever happened?

Q: Has it ever happened?

Mr. Nelson: Do you ever work at home?

The Witness: Yes.

Q: Do you prepare Zondo, Inc.'s correspondence at home?

Mr. Nelson: All of it, some of it, any of it?

Mr. Diederich: If you can allow him to answer the question, I would appreciate it.

Mr. Nelson: If it wasn't objectionable to form and permitted a clear answer. Object to form.

(*Id.* at 187:14 to 188:9.)

█ As Judge Mukasey aptly pointed out in *Learning Int'l,* 1990 WL 204163, at \*3 (citations and internal quotations omitted): "In all proceedings, including those governed by the Federal Rules of Civil Procedure governing discovery, there is a duty imposed upon counsel to deal fairly and sincerely with the court and opposing counsel so as to conserve the time and expense of all, and that actions may be litigated in an orderly manner." In this case, that standard clearly was not met, leading to unnecessary, vexatious delay, and the frustration of Elizondo's examination. Section 1927; Rule 30(d)(2). Nelson's conduct was presumably undertaken as part of his zealous representation of the interests of his client, as it was clearly in his interest, as well as that of Elizondo, to foreclose or forestall Diederich's efforts to discover facts in connection with plaintiff's claim. But such "zealous representation has its limits." Nelson's conduct frustrated Diederich's examination under Rule 30(d)(2) and unnecessarily prolonged the proceedings, demonstrating bad faith under Section 1927.

Nelson's assertions that his behavior was provoked by Diederich's own misconduct, and that the two sides are equally to blame for the delays in the deposition, are without merit.[3] (Def. Mem. at 15–16; Nelson Decl. ¶¶ 3–10.) Moreover, on several occasions in his submissions, Nelson asserts that defendant should be awarded relief on account of Diederich's alleged misconduct. (Def. Mem. at 15; Nelson Decl. ¶¶ 2, 16–20.) To the extent that this is a cross-motion for sanctions against Diederich, the motion is denied. While some of the actions that Nelson attributes to Diederich may have in fact occurred, (Nelson Decl. ¶ 18). such actions are inapposite to an award of sanctions. Moreover, while there are some passages where Diederich might have been better advised to forego a rejoinder, he did not cross the line as Nelson did repeatedly. *See SS & J Morris,* 2000 WL 1028680, at \*6.

Accordingly, pursuant to Rule 30(d)(2), Section 1927, and the Court's inherent power, the Court finds that sanctions are appropriate here.

## IV. Conclusion

For the foregoing reasons, the Court (i) denies plaintiff's motion to compel discovery and for certain rulings on admissibility, and

---

**3.** Nelson also suggests that his conduct during the deposition was justified by Elizondo's right to counsel. This argument is unavailing, as Nelson's actions were in violation of the Federal Rules of Civil Procedure. Moreover, the case on which Nelson relies in support of his communication with Elizondo during the examination, *In re Stratosphere Corp. Secs. Litig.,* 182 F.R.D. 614 (D.Nev.1998) is inapposite here. In that case, the Court held that counsel may speak to his client "during a recess that he or she did not request." *Id.* at 621. The court was also mindful that the right of counsel would be jeopardized upon "a showing that counsel or a deponent is abusing the deposition process," which the Court finds, is what occurred in this case. *Id.*

(ii) grants her motion for sanctions.[4] The Court orders Eric M. Nelson, Esq. to pay (i) $510.94 to plaintiff in reimbursement for the transcript cost of Elizondo's deposition, (ii) Diederich's normal hourly rate multiplied by the number of hours during which he questioned Elizondo on January 19, 2001, and (iii) $1,500 to the Clerk of the Court. Further, should plaintiff wish to redepose Elizondo, defendant is required to make him available for deposition at a time and place convenient to both parties.

SO ORDERED.

4. Plaintiff's motion for sanctions is denied to the extent that it is directed to Elizondo's purportedly evasive or incomplete disclosure, answer, or response under Rule 37(a)(3). (Pl. Mem. at 6.)